**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-01228-CMA-KLM

PRECISION FITNESS EQUIPMENT OF POMPANO BEACH, INC.,

     Plaintiff,

v.

NAUTILUS, INC.,

     Defendant/Third Party-Plaintiff,

v.

COMMERCIAL FITNESS PRODUCTS, INC.,
COMMERCIAL FITNESS PRODUCTS OF GEORGIA, INC.,
COMMERCIAL FITNESS PRODUCTS OF KENTUCKY, INC.,
COMMERCIAL FITNESS PRODUCTS OF PUERTO RICO, INC., and
RICHARD WASSERLAUF,

     Third-Party Defendants.

---

**ORDER DENYING THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

---

     This is a breach of contract action.  This matter is before the Court on the Third-

Party Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Doc. ## 109

and 115).  For the reasons stated below, the Third-Party Defendants' Motions are

DENIED.

## I.  BACKGROUND

A.  <u>FACTS</u>

On September 12, 2007, Plaintiff Precision Fitness Equipment of

Pompano Beach, Inc. ("Precision") initiated this lawsuit ("Florida Action") in state court in

Broward County, Florida, asserting claims for breach of contract against Defendant

Nautilus, Inc. ("Nautilus").  Nautilus removed the action to the United States District

Court, Southern District of Florida, on November 20, 2007.

On December 17, 2007, Nautilus filed a motion to transfer venue of the Florida

Action to this Court based on the forum-selection clause contained in the parties'

Commercial Dealer Agreement.  The Commercial Dealer Agreement executed between

Nautilus and Precision states that any controversies or claims arising out of the

agreement shall be subject to the exclusive jurisdiction of the state or federal courts for

Boulder County, Colorado.  (Doc. # 135 at Ex. A, ¶ 14.)  In June of 2008, the Florida

Action was transferred to this Court.  (Doc. # 1.)  Nautilus answered the complaint

and asserted counterclaims against Precision for breach of contract and trademark

infringement.  (Doc. # 96.)  Additionally, as set forth in Nautilus's Amended Answer,

Counterclaims and Third-Party Claims (Doc. # 96), Nautilus asserts claims against

Precision's owner and President, Richard Wasserlauf, and numerous entities that he

and possibly others formed Commercial Fitness Products, Inc., Commercial Fitness

Products of Georgia, Inc., Commercial Fitness Products of Kentucky, Inc., and

Commercial Fitness Products of Puerto Rico, Inc. (the "Commercial Fitness Entities").

On December 14, 2009, Plaintiff filed, pursuant to leave of Court, a Second Amended Complaint (Doc. # 135) to correctly identify Plaintiff as Precision Fitness Equipment of Pompano Beach Inc. instead of the previously identified Precision Fitness Equipment, Inc.  (*See* Doc. ## 130 and 134.)  Nautilus answered Plaintiff's Second Amended Complaint (Doc. # 141) and reasserted the counterclaims contained in its Amended Answer, Counterclaims and Third-Party Claims (Doc. # 96).

Essentially, Nautilus seeks, among other things, a determination by this Court that the Commercial Fitness Entities are successors of Precision, that Mr. Wasserlauf is the alter ego of Precision and/or the Commercial Fitness Entities, and that Precision's corporate veil be pierced, holding Mr. Wasserlauf and the Commercial Entities liable for Precision's debt and obligations, including the debt of Nautilus.

**B.     PROCEDURAL HISTORY**

Precision (Plaintiff) filed its Complaint in this case on June 9, 2008 (Doc. # 1). Nautilus (Defendant/Third-Party Plaintiff) filed its Amended Answer, Counterclaim, and Third-Party Complaint on August 25, 2009.  (Doc. # 96.)  Third-Party Defendant Commercial Fitness Products, Inc. filed its Motion to Dismiss for Lack of Personal Jurisdiction on October 1, 2009 (Doc. # 109).  Third-Party Defendants Mr. Wasserlauf and the remaining Commercial Fitness Entities filed their Motion to Dismiss on October 12, 2009 (Doc. # 115).  Nautilus responded on November 2, 2009 (Doc. # 123) and supplemented its Response on December 3, 2009 (Doc. # 133), and The Commercial Fitness Entities and Mr. Wasserlauf replied on December 21, 2009 (Doc. # 140).

Precision filed a Second Amended Complaint on December 4, 2009 (Doc. # 135), and Nautilus flied its Answer to Plaintiff's Second Amended Complaint and Counterclaims on December 29, 2009 (Doc. # 141).

## II.  STANDARD OF REVIEW

Once a court's personal jurisdiction over a [third-party] defendant has been challenged, "the [third-party] plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction based on affidavits and other written materials, as in this case, the [third-party] plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

In deciding such a motion to dismiss, "[t]he allegations in the [counterclaims] must be taken as true to the extent that they are uncontroverted by the [third-party] defendant's affidavits."  *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990). However, "only the well pled facts of [third-party] plaintiff's [counterclaims], as distinguished from mere conclusory allegations, must be accepted as true."  *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).  When the parties present conflicting affidavits, "all factual disputes are resolved in the [third-party] plaintiff's favor and the [third-party] plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.*; *see also Kennedy*,

919 F.2d at 128.  "[T]o put the contested facts in issue, however, affidavits submitted in

support of or in opposition to the motion to dismiss . . . must comply with the

requirements of Rule 56(e)," *i.e.*, they "must contain 'personal knowledge, admissible

facts, and affirmative showing of competency.'"  *Encore Prods., Inc. v. Promise*

*Keepers*, 53 F. Supp. 2d 1101, 1115 (D. Colo. 1999) (quoting *FDIC v. Oaklawn*

*Apartments*, 959 F.2d 170, 175 n.6 (10th Cir. 1992)).  "In order to defeat a [third-party]

plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling

case demonstrating 'that the presence of some other considerations would render

jurisdiction unreasonable.'"  *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### III.  ANALYSIS

### A.    <u>WHETHER EXERCISING PERSONAL JURISDICTION IS APPROPRIATE</u>

The Court must engage in a two-step analysis in determining whether the

exercise of personal jurisdiction is appropriate.  *Wenz v. Memery Crystal*, 55 F.3d 1503,

1507 (10th Cir. 1995).  The Court "must initially determine whether the exercise of

jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state

law, . . . and then determine whether the exercise of jurisdiction comports with the due

process requirements of the Constitution."  *Id.* at 1506-07.  Because Colorado's

long-arm statute has been construed by the Colorado Supreme Court as allowing

personal jurisdiction to the full extent permitted under federal law, *Safari Outfitters, Inc.*

*v. Superior Ct.*, 448 P.2d 783, 784 (Colo. 1968), "[the court's] analysis collapses into a

single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process." *Nat. Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), aff'd, 16 Fed. Appx. 959 (10th Cir. 2001). "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *see also Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991) (corporation's contacts with forum may be imputed to its successor for personal jurisdiction purposes).  Moreover, courts have "uniformly found that it is consistent with due process to impute a corporation's waiver of personal jurisdiction to its successor (or its individual alter ego) . . . ." *Patin*, 294 F.3d at 654**.**

## B.   <u>WHICH STATE'S LAW TO APPLY</u>

As an initial matter, this Court must determine which state's law to apply.  There are potentially two states' laws at issue here - Florida and Colorado.  In diversity cases like this one, the Court should apply the choice of law rules of the forum state to ascertain which state's law governs the substantive determination of whether Nautilus set forth a prima facie case for piercing the corporate veil and/or successor liability. *Pound v. Ins. Co. of North America,* 439 F.2d 1059, 1062 (10th Cir. 1971).  However, where the parties agree as to which substantive law controls in a diversity case, the

Court can, and ordinarily should, accept such a concession. *See, e.g., One Nat. Bank v. Antonellis*, 80 F.3d 606, 608 (1st Cir. 1996). In this case, the parties agree that Florida law applies, and therefore, the Court will not delve into any further analysis of this issue.[1]

### C.      WHETHER NAUTILUS HAS MADE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER MR. WASSERLAUF.

At this stage, in order for Nautilus to make a *prima facie* showing of personal jurisdiction over Mr. Wasserlauf, Nautilus must set forth facts sufficient to pierce Precision's veil and hold Mr. Wasserlauf liable for the debts of Precision (which is subject to personal jurisdiction in Colorado per the Commercial Dealer Agreement (Doc. # 135 at 14)). The Florida Supreme Court has held that in order to pierce the corporate veil a plaintiff must allege and prove (1) that the corporation is a "mere instrumentality" or alter ego of the defendant and (2) that the defendant engaged in "improper conduct" in the formation or use of the corporation. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120-21 (Fla. 1984). In defining "improper conduct," the court explained that the corporate veil will be penetrated where "it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." *Id.* at 1120.

In support of these two elements, Nautilus sets forth the following facts:

•      Mr. Wasserlauf is the President of and manages Precision and the Commercial Fitness Entities (Doc. # 96 at 7, ¶ 7.)

---

[1]   In any event, Colorado law sets forth substantially the same test as Florida for piercing the corporate veil. *See In re Phillips*, 139 P.3d 639, 643-44 (Colo. 2006) ("Individual liability is appropriate when the corporation is merely the alter ego of the shareholder, and the corporate structure is used to perpetuate a wrong.") (citations omitted).

- The ownership of Precision and the Commercial Fitness Entities consists of the same four individuals, including Mr. Wasserlauf (Doc. # 123, Ex. 1, Wasserlauf Depo. at 16:6-10 and 18:9-16.)
- Precision is undercapitalized and has no assets (*Id.* at 89:20-91:1.)
- Precision and the Commercial Fitness Entities share the same address and showroom (*Id.* at 6:8-14; 93:8-94:15.)
- The Commercial Fitness Entities leased the same property that Precision leased, with the exact same terms (*Id.* at 98:7-23.)
- The Commercial Fitness Entities conduct the same business as Precision: selling commercial exercise equipment (*Id.* at 9:16-23; 103:1-24.)
- The Commerical Entities have the same clients and have called on and seek to sell to the same clients as Precision (*Id.* at 110-112.)
- The Commercial Fitness Entities employ the same sales representatives, same bookkeeper, and same accountant as did Precision (*Id.* at 19:9-20:12; 22:14-16.)
- The Commercial Entities show and sell Nautilus products; and (*Id.* at 10:13-11:8; 55:23-56:22; 91:25-92:23.)
- The Commercial Fitness Entities accept "trade-ins" of Nautilus equipment sold by Precision (*Id.* at 185:8-20.)
- Money flowed freely between Precision and the Commercial Fitness Entities (Doc. # 133 at 2.)
- The Commercial Fitness Entities assumed the liabilities of Precision, including bank loans personally guaranteed by Richard Wasserlauf (*Id.*)
- Precision transferred all its assets to the Commercial Fitness Entities (*Id.*)

The Fifth Circuit's decision in *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d

640 (5th Cir. 2002), sheds light on whether these facts would be sufficient to pierce the

corporate veil.  In *Patin*, where the plaintiffs were injured in a boating accident and sued

the manufacturer of the boat, Thoroughbred Power Boats, Inc. ("Thoroughbred"), the

Fifth Circuit applied Florida law and upheld the district court's findings that it was

appropriate to pierce the corporate veil and hold the owners liable for the obligations

of the corporation.  *Id.* at 647-649.  During the course of the lawsuit, the plaintiffs

discovered that Thoroughbred had ceased doing business; therefore the plaintiffs

amended the complaint to add the owner, Steven Stepp ("Stepp"), and Velocity Power

-8-

Boats ("Velocity"), as additional defendants.  The plaintiffs alleged that Velocity was the

successor corporation to Thoroughbred and that Velocity and Thoroughbred were both

alter egos of Stepp.  *Id.* at 643.  In concluding that Velocity was the successor of

Thoroughbred and that it was appropriate to pierce the corporate veil and hold Stepp

liable for the obligations of Velocity and Thoroughbred, the district entered the following

findings of fact:

- Until August, 1996, Stepp manufactured [pleasure] boats through Thoroughbred Power Boats, Inc.
- In August, 1996, Thoroughbred ceased manufacturing and selling pleasure boats.
- In August, 1996, Velocity Power Boats, Inc. began manufacturing and selling pleasure boats.
- Beginning in August, 1996, Stepp manufactured his boats through Velocity.
- The boats manufactured by Velocity after July 1996, were essentially the same boats that had been manufactured by Thoroughbred.
- Thoroughbred and Velocity were wholly owned by Steven Stepp and his wife.
- Steven Stepp and his wife were the only officers and board members of Thoroughbred and Velocity.
- Thoroughbred and Velocity shared the same address and telephone numbers.
- After August 1996 Steven Stepp leased the same property to Velocity that he had leased to Thoroughbred prior to August, 1996.
- After August 1996, Thoroughbred "leased" its employees; and after July, 1996, many of the same "leased" employees became the "leased" employees of Velocity.
- By check dated August 13, 1996, Velocity transferred $80,000 to Thoroughbred.
- On or about September 5, 1996, $60,000 was transferred from Velocity to Thoroughbred.
- Steven Stepp's testimony was less than credible, in particular, but not limited to his testimony accounting for the transfer of $80,000 and $60,000 from Velocity to Thoroughbred and his contention that he took certain corporate or economic action because his accountant or attorney told him to do so.
- Steven Stepp did not provide a satisfactory or believable rational [sic] for the transformation of Thoroughbred and Velocity in 1996.

*Id.* at 645.

Given the similarity between Nautilus' allegations and the findings of fact in *Patin,* this Court finds that Nautilus has made a *prima facie* showing that Mr. Wasserlauf is the alter ego of Precision and/or the Commercial Fitness Entities, and that Mr. Wasserlauf engaged in improper conduct in the formation or use of the corporation.  Accordingly, this Court may exercise personal jurisdiction over Mr. Wasserlauf in order to determine whether it should pierce Precision's corporate veil and hold him individually liable for Precision's debts and obligations.

**D.**     **WHETHER NAUTILUS HAS MADE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER THE COMMERCIAL FITNESS ENTITIES.**

At this stage, in order for Nautilus to make a *prima facie* showing of personal jurisdiction over the Commercial Fitness Entities, Nautilus must set forth facts sufficient to hold the Commercial Fitness Entities as successors of Precision.  Florida law provides that the liabilities of a predecessor corporation can be imposed upon a successor corporation when: (1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.  *Bernard v. Kee Mfg. Co., Inc.,* 409 So.2d 1047, 1049 (Fla. 1982).  "A 'mere continuation of business' will be found where one corporation is absorbed by another, as evidenced by an identity of assets, location, management, personnel, and stockholders." *Patin*, 294 F.3d at 650 (citing *Amjad Munim, M.D., P.A. v. Azar*, 648 So.2d 145, 154 (Fla. Dist. Ct. App. 1994)).

-10-

As set forth in detail above, Nautilus has alleged that: (i) Precision, through Mr. Wasserlauf, transferred its assets to the Commercial Fitness Entities; (ii) the Commercial Fitness Entities sell Precision's assets, including its Nautilus equipment; (iii) Precision and the Commercial Fitness Entities share the same or substantially the same ownership; (iv) Precision and the Commercial Fitness Entities both market and sell commercial fitness equipment; (v) Precision and the Commercial Fitness Entities are managed and part-owned by Mr. Wasserlauf; (vi) the Commercial Fitness Entities employ or employed many of the same employees that Precision employed; and (vii) the Commercial Fitness Entities leased the same property as Precision. These allegations demonstrate an identity of assets, location, management, personnel, and stockholders between Precision and the Commercial Fitness Entities as required under Florida law.  *See Patin*, 294 F.3d at 650 (applying Florida law and holding that the district court's findings that Thoroughbred and Velocity shared the same ownership, management, address and telephone numbers, and  leased the same property and many of the same employees supported the conclusion that Velocity was a "mere continuation" of Thoroughbred).

Accordingly, Nautilus has made a *prima facie* showing of successor liability and, therefore, this Court may exercise personal jurisdiction over the Commercial Fitness Entities in order to determine whether they are successor corporations of Precision.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, it is ORDERED that the Third-Party

Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Doc. ## 109 and 115)

are DENIED.

IT IS FURTHER ORDERED that all subsequent filings shall contain the caption

as set forth above, in this Order.

DATED:  February __11__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge