IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 08-cv-01228-CMA-KLM

PRECISION FITNESS EQUIPMENT OF POMPANO BEACH, INC.,

   Plaintiff/Counter Defendant,

v.

NAUTILUS, INC.,

   Defendant/Counterclaimant/Third Party Plaintiff,

v.

COMMERCIAL FITNESS PRODUCTS, INC.,
COMMERCIAL FITNESS PRODUCTS OF GEORGIA, INC.,
COMMERCIAL FITNESS PRODUCTS OF KENTUCKY, INC.,
COMMERCIAL FITNESS PRODUCTS OF PUERTO RICO, INC., and
RICHARD WASSERLAUF,

   Third-Party Defendants.

---

**ORDER DENYING PLAINTIFF PRECISION FITNESS EQUIPMENT OF POMPANO BEACH, INC.'S MOTION TO BIFURCATE COUNTS SIX AND SEVEN OF DEFENDANT NAUTILUS, INC.'S COUNTERCLAIMS/THIRD-PARTY CLAIMS**

---

This matter is before the Court on a Motion to Bifurcate Counts Six and Seven of Defendant Nautilus, Inc.'s Counterclaims/Third-Party Claims, which Motion was filed by Plaintiff Precision Fitness Equipment of Pompano Beach, Inc. ("Precision Fitness"). (Doc. # 177.) For the following reasons, Plaintiff's Motion is DENIED.

## I. BACKGROUND

This three-year old dispute arises from Plaintiff's and Defendant's alleged breaches of a Commercial Dealer Agreement ("Agreement"). Pursuant to the Agreement, Plaintiff was to act as Defendant's exclusive commercial dealer of Defendant's products in the State of Florida and in the Caribbean.

On September 12, 2007, Plaintiff Precision Fitness initiated this lawsuit in state court in Broward County, Florida, asserting claims for breach of contract against Defendant Nautilus, Inc. ("Nautilus"). In pertinent part, Precision Fitness alleges that Nautilus failed to ship equipment, failed to provide Precision Fitness with agreed upon rebates and/or discounts, and sold products within Precision Fitness's exclusive territory. (Doc. # 1.)

Nautilus removed the action to the United States District Court, Southern District of Florida, on November 20, 2007. On December 17, 2007, Nautilus filed a motion to transfer venue of the Florida Action to this Court based on the forum-selection clause contained in the parties' Commercial Dealer Agreement. In June of 2008, the Florida Action was transferred to this Court.

Nautilus answered the Complaint and asserted counterclaims against Precision Fitness for breach of contract, unfair trade practices, trademark infringement, violations of the Florida Uniform Fraudulent Transfer Act, and declaratory judgment. (Doc. # 96.) Additionally, Nautilus asserted third-party claims against Precision Fitness's owner and President, Richard Wasserlauf, and numerous entities that he and possibly others

2

formed, namely Commercial Fitness Products, Inc., Commercial Fitness Products of Georgia, Inc., Commercial Fitness Products of Kentucky, Inc., and Commercial Fitness Products of Puerto Rico, Inc. ("Third-Party Defendants").  (Doc. # 96.)

On December 14, 2009, Plaintiff Precision Fitness filed, pursuant to leave of Court, a Second Amended Complaint (Doc. # 135)[1] to correctly identify itself as Precision Fitness Equipment of Pompano Beach Inc., instead of the previously identified Precision Fitness Equipment, Inc.  (*See* Doc. ## 130 and 134.)  Nautilus answered Plaintiff's Second Amended Complaint and asserted essentially the same seven claims against Plaintiff and the Third-party Defendants as it had asserted in its Amended Answer, Counterclaims and Third-Party Claims.  (Doc. # 141.)  Plaintiff and the Third-Party Defendants answered Nautilus's Counter and Third-Party Claims on January 15, 2010 and March 1, 2010, respectively.  (Doc. ## 146 and 150.)

A Final Pretrial Conference was held on August 31, 2010, before Magistrate Judge Kristen L. Mix.[2]  (Doc. # 170.)  During a September 13, 2010 Status Conference held before the undersigned, this matter was set for a four-day jury trial to commence on November 20, 2010, at 9 a.m., with a Trial Preparation Conference set for November 19, 2010.  (Doc. # 175.)

---

[1] On December 15, 2009, Plaintiff re-filed the Second Amended Complaint to properly identify itself in the case caption.  (Doc. # 137).

[2] On June 11, 2008, by Order of Referral, this matter was referred to United States Magistrate Judge Kristen L. Mix for the handling of all non-dispositive and pre-trial matters, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a).  (Doc. # 5).

Two days after the status conference, on September 15, Plaintiff filed the instant Motion to Bifurcate Counts Six and Seven of Defendant Nautilus, Inc.'s Counterclaims/ Third-Party Claims. (Doc. # 177.) In pertinent part, Plaintiff contends that the Sixth Counterclaim/First Third-Party Claim (Violation of the Florida Uniform Fraudulent Transfer Act) and the Seventh Counterclaim/Second Third-Party Claim (Declaratory Relief Under 28 U.S.C. § 2201, *et.seq.*, and Fed. R. Civ. P. 57) are "clearly distinct and separable from" the other contract and unfair trade practices claims that comprise this action. (Doc. # 177 at 11.)[3] Plaintiff further asserts, without substantiation, that "the Third-Party Claims are significantly different from the breach of contract issues and will require the utilization of substantially different evidence at trial. (*Id.*) Plaintiff also contends that bifurcation will "provide clarity and simplify the issues for the jury[.]" (*Id.*) Finally, Plaintiff asserts that it "could be significantly prejudiced if bifurcation is denied in light of the allegations raised in the Third-Party Claims." (*Id.* at 12.)

Defendant Nautilus responded on October 11, 2010. (Doc. # 187.) In opposition to Plaintiff's Motion, Defendant posits that "the very evidence [Plaintiff] seeks to prevent the jury from hearing . . . is relevant to the breach of contract claims. As a result, separate trials will not defer the cost of 'unnecessary trial preparation' or expedite and economize the trial[,]" but "would only result in duplicating the same witnesses, the

---

[3] Counterclaims 6 and 7/Third-Party Claims 1 and 2 arise from Third-Party Defendant Richard Wasserlauf's purported attempts to avoid satisfying Precision Fitness's debt obligations, including a debt owed to Defendant Nautilus, by simply changing the name of his business from Precision Fitness to Commercial Fitness and attempting to transfer Precision Fitness's assets to Commercial Fitness. (Doc. # 187 at 3.)

4

same testimony and the same evidence as the previous trial." (*Id.* at 2.) The Court agrees.

## II. ANALYSIS

Pursuant to Fed. R. Civ. P. 42(b), a district court has broad discretion to order separate trials. *See also Marianist Province of the United States, Inc. v. ACE USA*, No. 08-cv-01760, 2010 WL 2681760, at *1 (D. Colo. July 2, 2010) (unpublished). "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more issues, claims, crossclaims, and counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Although the trial court has discretion to order separate trials, that does not mean that severance is the norm or even a common occurrence. *See, e.g.*, Fed. R. Civ. P. 42(b) advisory comm. notes (noting that bifurcation should not be "routinely ordered," but "it is important that it be encouraged where experience has demonstrated its worth"); 8 MOORE'S FEDERAL PRACTICE, § 42.40[4][a] at 42-46 (Matthew Bender 3d ed. 2010) ("[I]t should be noted that bifurcation and separate trials are not the normal course of events, and a single trial will usually be more expedient and efficient."). Separation must further the goals of Rule 42(b); the parties' desire to proceed in a certain order is not paramount. *See York v. AT&T*, 95 F.3d 948, 957-58 (10th Cir. 1996) ("Such decisions [on bifurcation] must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury."). Further, severance

5

under Rule 42(b) should not prejudice one party.  *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

In the instant case, Plaintiff has not persuaded the Court that bifurcation will result in measurable gains in convenience, efficiency, or a reduction in prejudice, or that a separate trial on Defendant's Sixth and Seventh Counterclaims/First and Second Third-Party Claims could go forth without substantial presentation of duplicative evidence.  Defendant's breach of contract and unfair trade practices claims are based, at least in part, on the same conduct underlying the Sixth and Seventh Counterclaims/ First and Second Third-Party Claims, namely Plaintiff's attempts to avoid its contractual obligations by purportedly engaging in fraudulent transfers of its assets to a newly-formed company that is allegedly Plaintiff's alter ego.  Accordingly, the at-issue claims, counterclaims, and third-party claims are all inter-related.

Moreover, Defendant represents that, in support of its breach of contract claims, it will present evidence and testimony showing the efforts that Third-Party Defendant Wasserlauf undertook to avoid paying the debt owed to Nautilus.  (Doc. # 187 at 7.)  Defendant also states that it will present this same evidence and testimony in connection with the Sixth and Seventh Counterclaims/First and Second Third-Party Claims.  (*Id.*)  Because the evidence and testimony relevant to Defendant's breach of contract and unfair trade practices claims are intertwined with the evidence and testimony relevant to the Sixth and Seventh Counterclaims/First and Second Third-Party claims, the Court concludes that bifurcation "would result in unwarranted

6

duplication of evidence and would not be economical or convenient for the Court or the parties." *Marianist Province of the United States, Inc.*, 2010 WL 2681760, at *2.

Further, to the extent that Plaintiff may be prejudiced by jurors confusing or conflating issues, such prejudice can be mitigated through the jury instructions and verdict form. "[T]he mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy . . . . [W]here the degree of potential prejudice is not compelling, the trial judge can often mitigate the suggested prejudice through appropriate jury instructions and other devices." *Tri-R Systems, Ltd. v. Friedman & Son, Inc.*, 94 F.R.D. 726, 728-29 (D. Colo. 1982) (denying motion for separate trials) (internal citations omitted); *see also Saviour v. Kansas City, Kansas*, No. 90-2430, 1992 WL 135019, at *9 (D. Kan. May 15, 1992) (unpublished) (denying motion to bifurcate, in part, because the court has "sufficient preventative measures at its disposal to eliminate the risk of prejudice"). In the instant case, Plaintiff has failed to provide any evidence to support its conclusory assertion that the danger of prejudice is so substantial that bifurcation is warranted.

Finally, as previously noted, this lawsuit has been pending for over three years. The discovery period has ended; the parties are ready to go to trial. Therefore, bifurcation at this late stage is unlikely to provide the benefits contemplated by Rule 42(b). *See Crawford v. Kansas City, Kansas*, No. 95-2336, 1997 WL 381758, at *2 (D. Kan. June 11, 1997) (unpublished) ("Where . . . discovery has already been

completed, there is less to be gained by bifurcation.") At this stage in the proceedings, bifurcation would serve only to further delay and prolong the litigation and would, therefore, unduly prejudice Defendant, the non-movant.

Accordingly, IT IS ORDERED THAT Plaintiff Precision Fitness Equipment of Pompano Beach, Inc.'s Motion to Bifurcate Counts Six and Seven of Defendant Nautilus, Inc.'s Counterclaims/Third Party Claims (Doc. # 177) is DENIED.

DATED: October __14__, 2010

BY THE COURT:

_Christine M Arguello_
CHRISTINE M. ARGUELLO
United States District Judge